CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
October 28, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Robin Bordwine
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

JAMES EDWARD BLEDSOE, )
PLAINTIFF, )
v. ) CASE NO.: 1:25cv77
) JURY DEMANDED
NATHAN KENNEDY, IN )
BOTH HIS INDIVIDUAL )
AND OFFICIAL CAPACITY )
AS DEPUTY SHERIFF OF )
SCOTT COUNTY, VIRGINIA, )
AND JEFF EDDS, IN BOTH )
HIS INDIVIDUAL AND )
OFFICIAL CAPACITY AS )
SHERIFF OF SCOTT )
COUNTY, )
DEFENDANTS. )

# SECOND AMENDED COMPLAINT

COMES NOW, James Edward Bledsoe, Plaintiff, by counsel and states the following facts for his Complaint:

1. Plaintiff James Edward Bledsoe is and was at all times a resident of Scott County, Virginia.
2. Defendant Nathan Kennedy was a full-time police officer employed at all times relevant to this Complaint by the Scott County Sheriff's Office.
3. Defendant Sheriff Edds was and is the Sheriff of Scott County, Virginia at all times relevant to this Complaint.

## JURISDICTION AND VENUE

4. This action is brought for damages and other appropriate relief under 42 U.S.C. Section 1983 for violation of the Plaintiff's civil rights under color of state law.

5. Jurisdiction would be conferred upon an appropriate federal court by 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343(a)(3). Venue is proper under 28 U.S.C. Section 1391(b).

## FACTS

6. On or about, December 02, 2023 Plaintiff was pulled over for Driving Under the Influence.

7. Officer Kennedy observed Mr. Bledsoe traveling on Kane Street in Gate City, VA. According to Kennedy, the vehicle crossed the double yellow line. The vehicle then turned left on Jackson Street, going west, and according to Kennedy crossed the double yellow line again.

8. At no point did Officer Kennedy state in the Criminal Complaint that he smelled the odor of alcohol, marijuana or any other drug.

9. *Bledsoe denies crossing the double yellow line on the body camera footage.*

10. *In fact, Officer Kennedy did not administer the Intoxilyzer nor the Horizontal Gaze Nystagmus test that were performed by the Gate City police officer because Deputy Kennedy reported that he was not certified on the machine. Deputy Kennedy did not perform the three standardized field sobriety tests at the scene, which indicates a lack of familiarity with standard police procedure.*

11. At the initial onset of the stop, Officer Kennedy accused Plaintiff of Driving While Intoxicated.

12. Plaintiff responded that he had never had a drink of alcohol in his entire life.

13. At some point later, a second officer arrived on scene. Upon information and belief, the officer was from the Town of Gate City.

14. *Plaintiff, when asked, did touch his nose correctly.*

15. *The plaintiff was asked to count ABCs and count one, two, three, four and four, three, two, one, using his thumb, which he seems to essentially perform without significant clues of intoxication.*

16. In fact, the Plaintiff showed no signs of the use of alcohol on the Nystagmus test performed with the light at the Sheriff's office after arrest. The town officer reported to Plaintiff and to Deputy Kennedy that Mr. Bledsoe showed no clues of intoxication on the test.

17. Plaintiff was then asked to do the one leg stand. He informed the officer conducting the test that he could not perform the one leg stand because he had suffered from Covid 19 sometime in the past, had been hospitalized for 30 days and sent to rehabilitation. In spite telling the police officer that he did not think he could perform the test, he was asked to perform the test. At some point during the test, he may have balanced with his arms, the only possible clue that could have resulted from the field sobriety test. Mr. Bledsoe explained that he could do jumping jacks correctly and showed them he could properly perform jumping jacks.

18. *Finally, Mr. Bledsoe passed the Intoxilyzer test with flying colors showing no intoxication.*

19. The Criminal Complaint does not state that Plaintiff failed the one leg stand. In fact, the Criminal Complaint does not mention the results of any of the field sobriety tests.

20. Mr. Bledsoe, told him he had never used any illegal drug, was not on any medications at the time and demanded a blood test, to which he was refused.

21. Deputy Kennedy placed Plaintiff under arrest for DUID. Plaintiff again demanded a blood test and he was told, 'best thing you can do is sit down and shut up.'

22. Officer Kennedy stated that Plaintiff had red and glossy eyes. *However, on video there are no signs of his eyelids drooping to support this fact. Mr. Bledsoe's eyes are properly focused on the Deputy as he approaches the vehicle.*

23. *Plaintiff told the officers, at some point, on the video, he would take any and all tests they would give him.*

24. Plaintiff has never had a drink of alcohol or taken an illegal drug in his life.

25. *Importantly, no illegal drugs or prescription medication were found in his car upon search.*

26. Plaintiff demanded a blood test, to *which the police failed to see was administer violating police procedure.*

27. Upon information and belief, the nurse on call in Scott County to perform the blood test was not on call and being no hospital in Scott County, Officer Kennedy refused to drive Plaintiff to *Norton Community Hospital because of a policy of the Scott County Sheriff's Office not to drive out of the county to an out of county hospital,*

*according to Deputy Kennedy's Supervisor Darla Lipe as recorded on the body cam video.*

28. Subsequent to being released, Plaintiff went to the hospital and had a blood test which showed absolutely no signs of alcohol or drugs in his system. *See, Ex.'A'.*

29. Plaintiff incurred a tow bill from Sam's Towing in the amount of One Hundred Seventy-Five Dollars and zero cents $175.00.

30. At his initial court date, the Commonwealth's Attorney for Scott County, Kyle Kilgore dismissed the charges with prejudice and later filed his own motion to have Plaintiff's criminal record expunged of the charge.

31. Plaintiff has no criminal record and other than this charge has never been charged with a crime.

32. As a result of being arrested, Plaintiff was booked, spent time in jail and has his picture published in a local paper as being charged with DUID.

33. *The paperwork of the Scott County Sheriff's Office incorrectly shows that Mr. Bledsoe was charged by Summons and not by Warrant. The Warrant is attached as Exhibit and does not say that defendant failed any field sobriety test. Ex. 'B".*

34. Plaintiff's reputation for truthfulness in the community is impeccable.

A VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS VIA SECTION 1983

35. At the time of Plaintiff's arrest, he was jerked violently causing bruising about his wrists and pain in his shoulder.

36. Plaintiff was stopped initially for a traffic infraction of crossing the double yellow lines. Once the investigation clearly showed that he was not intoxicated or on drugs through the field sobriety test, Plaintiff was illegally arrested.

37. *On video, it is clear that Mr. Bledsoe was not slurring his words. Mr. Bledsoe was responding to Deputy Kennedy's questions while seated in his car coherently and in no way appeared intoxicated, with no signs of intoxication of any kind. At this point, the mission was over and after giving Mr. Bledsoe a Summons for traffic violation, he should have been free to go.*

38. Plaintiff was intentionally restrained against his will and without his consent.

39. The arrest was without legal justification and without probable cause to arrest for DUI or DUID.

40. Plaintiff alleges that his arrest by Defendant Kennedy was illegal and with the use of excessive force in violation of his right under the Fourth Amendment of the United States Constitution to be free from unreasonable arrest and his right under the Fourteenth Amendment of the United States Constitution to due process of law. Plaintiff's arrest was made under color of the authority of Defendant Kennedy as a Deputy of the Scott County Sheriff's Office.

41. Plaintiff further alleges that the violation of his constitutional rights were caused by implementation of a custom, policy, or official act of Defendant, Scott County Sheriff's Office in failing to train or supervise their officers in arrest and apprehension and/or failing to discipline for citizen complaints.

42. *Plaintiff, further alleges that the violation of his constitutional rights were caused by an implementation of a custom, policy or official act of Defendant Edds, Sheriff of Scott County in having a policy, as articulated by Deputy Kennedy's Supervisor Darla Lipe, of not transporting defendants out of county to the hospital for a blood test when the nurse is not available.*

43. Deputy Kennedy has been the subject of at least four Giglio disclosures most or all of which occurred before he was hired by the Scott County Sheriff's Office. *See. Ex. 'C'.*

44. Minton v. Kennedy, Case No.: 2:13cv00036 (Big Stone Gap) involved the alleged assault and failure to provide medical care to the two elderly plaintiffs.

45. Another alleged Giglio disclosure involved two misdemeanors where he allegedly assaulted and failed to provide medical care to a juvenile.

46. Another incident happened where he may have provided false information about the use of town property after an accident.

47. The prior instances bear upon the same issue or issues involved in the case, search and seizure.

48. Deputy Kennedy was a political hire of Sheriff Edds, hired for supporting him during his campaign and not upon his merit.

49. Sheriff Edds had actual or constructive knowledge of these prior instances in Deputy Kennedy's police record before hiring him.

50. The Scott County Sheriff's Office has a custom of not providing remedial training to it's officers that have exhibited prior policing problems, but only requiring the bare minimum training from the

police academy – that does not focus on specific policing procedures to correct prior instances of failure or abuse.

51. Sheriff Edds was deliberately indifferent to Deputy Kennedy's training.

52. As a direct and proximate result thereof Plaintiff has been caused physical and mental suffering, *incurred a tow bill,* incurred medical bills and will incur medical bills in the future to be cured of said mental and physical injuries, pain and suffering, and humiliation, embarrassment, damage of reputation and emotional distress as a consequence of being arrested illegally and with excessive force. Pursuant to 42 U.S.C. Section 1983, Plaintiff seeks an award of attorneys' fees and costs incurred in bringing this action.

53. *As a direct and proximate result of Deputy Kennedy's illegal arrest, Mr. James Edward Bledsoe was denied due process of law suffering humiliation, embarrassment, damage of reputation and emotional distress and incursion of a tow bill.*

54. *As a direct and proximate result of the Scott County Sheriff's Office policy of not transporting defendants out of county to the hospital for the performance of a blood test, Mr. James Edward Bledsoe was*

*denied due process suffering humiliation, embarrassment, damage of reputation and emotional distress and incursion of a tow bill.*

GROSS NEGLIGENCE OF KENNEDY

COMES NOW YOUR PLAINTIFF, pursuant to the pendent jurisdiction statute pleading alternatively as is Plaintiff's right to do and states the following facts and averments:

55. Defendant Nathan Kennedy, SCSO was grossly negligent, malicious and reckless in *making an illegal arrest* and in failing to cause a blood test to be taken according to police procedure.

56. As a direct and proximate result thereof Plaintiff has been caused physical and mental suffering, incurred a tow bill, pain and suffering, and/or humiliation, embarrassment and emotional distress as a consequence of being arrested with excessive force.

UNLAWFUL TOUCHING

57. Plaintiff avers that Defendant Kennedy's intentional and unjustified arrest Plaintiff was an unlawful touching of Plaintiff's person constituting assault and battery.

FALSE ARREST

58. Plaintiff was intentionally, recklessly, knowingly illegally placed held against his will under the Color of Law without the benefit of a blood test *against proper police procedure*.

59. *The investigation clearly showed that he was not intoxicated or on drugs by clear observation that his speech was not slurred, he was responding coherently when approach at his window by the Deputy and his eyes were focused and not dropping,* Plaintiff was illegally arrested.

60. Plaintiff was intentionally restrained against his will and without his consent.

61. The arrest was without legal justification and without probable cause to arrest for DUI or DUID.

62. As a direct and proximate result thereof Plaintiff has been caused physical and mental suffering, incurred a tow bill, medical bills and will incur medical bills in the future to be cured of said mental and physical injuries, pain and suffering, and/or humiliation, embarrassment and emotional distress as a consequence of being arrested with excessive force.

MALICIOUS PROSECUTION

63. Plaintiff incorporates each and every element of the above allegations as if set fully herein.

64. Defendant Deputy Kennedy arrested Plaintiff without performing *the standardized set of field sobriety test and inspite of Mr. Bledsoe clearly not appearing intoxicated or under the influence of prescription or illegal drugs.*

65. Deputy Kennedy's seizure of Plaintiff was without probable cause.

66. The criminal proceedings against Plaintiff were dismissed with prejudice.

67. All of this was in violation of the IV amend. of the U.S. Const.

68. *As a direct and proximate result of illegal arrest, Mr. Bledsoe was caused to incur a tow bill, suffer embarrassment, humiliation, damage of reputation and emotional distress.*

FAILURE TO TRAIN

69. *Plaintiff incorporates each and every paragraph above as if fully set herein.*

70. Plaintiff further alleges that the violation his constitutional rights were caused by implementation of a custom, policy, or official act of Defendant, Jeff Edds, Sheriff in failing to train or supervise his officers regarding IV Amend. Search & Seizure.

71. As *a direct and proximate result of illegal arrest, Mr. Bledsoe was caused to incur a tow bill, suffer embarrassment, humiliation, damage of reputation and emotional distress.* Pursuant to 42 U.S.C. Section 1983, Plaintiff seeks an award of attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff demands judgment against the defendant and the following relief:

1. That the defendant be required to appear and answer this complaint within the time required by law;
2. That Plaintiff be awarded a judgment against the defendant for compensatory damages in an amount of Two Hundred and Fifty Thousand Dollars and zero cents $250,000.00 or a judgment fair, just and according to law;
3. That Plaintiff be awarded punitive damages an amount allowed by law;
4. That Plaintiff be awarded attorneys fees pursuant to 42 U.S.C. Section 1983;
5. That the costs of this action be awarded to Plaintiff and for such other and general relief to which the Plaintiff may be entitled; and
6. That a jury of six 7 people be impaneled to try this cause.

JAMES EDWARD BLEDSOE

BY: COUNSEL

s// Rob Starnes
Rob Starnes
STARNES LAW OFFICE
Attorney at Law
P.O. Box 277
Gate City, Va 24251
(423) 247-3558
(276) 386-2467
TN BPR # 021022
VA BAR NO. 45017